United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 15, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-30995

Summary Calendar

_____

KEVIN J CANNATELLA

      Plaintiff - Appellee

  v.

TIMOTHY D GOLDEN, ET AL

      Defendants

ALLSTATE INSURANCE COMPANY, Sued herein as the
Uninsured/Under Insured Motorist Carrier of Plaintiff, Kevin
J Cannatella

      Defendant - Appellant

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 2:02-CV-3705

_____

Before KING, WIENER, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

    Defendant-appellant Allstate Insurance Company appeals the

district court's denial of its post-judgment Motion for

Determination of Policy Coverage, which argued that plaintiff-

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

-1-

appellee Kevin Cannatella could not recover the $2000 limit for his medical payments under Allstate's uninsured/underinsured motorist policy because the policy excluded coverage if such payments are "covered under any worker's compensation law."  For the following reasons, we REVERSE the order of the district court denying Allstate's motion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On November 1, 2001, while on duty with the Louisiana State Police running radar on Interstate 10, plaintiff-appellee Kevin Cannatella ("Cannatella") suffered neck and back injuries when a vehicle driven by Timothy Golden ("Golden") struck Cannatella's police cruiser.  At the time of the accident, Cannatella was working a Local Agency Cops Enforcement ("LACE") detail, which is an overtime project available to state police officers through their employment with the state police department, for the St. Charles parish.[1]  On November 1, 2002, Cannatella filed suit in a

_____

[1]  Under Louisiana law, the sheriff of any parish within the state may contract with the state police department

> for the regular assignment of an agreed number of employees of the division of state police to the municipality or parish, as the case may be, so as to provide police protection therein and to enforce both state laws and local ordinances, in consideration of the payment by the municipality, parish, or other unit of government of a sum agreed upon by them and the department.

LA. REV. STAT. ANN. § 40:1388 (2006).  According to Cannatella, although the local parish actually pays for the service, officers performing LACE detail receive compensation at the overtime rate in the check issued to them by the state police department.  R. at

Louisiana state court against Golden, Golden's liability insurer, Safeco Insurance Company of America ("Safeco"), and Cannatella's own uninsured/underinsured motorist carrier, Allstate Insurance Company ("Allstate"). The case was removed to the United States District Court for the Eastern District of Louisiana on December 16, 2002 as a diversity action with an amount in controversy in excess of $75,000 under 28 U.S.C. § 1332(a).

Following a pretrial conference on January 30, 2004, the parties stipulated that Safeco's applicable policy limit was $100,000, that Allstate's applicable policy limit was $10,000, and that Cannatella's cause of action did not exceed the sum of the available insurance limits, exclusive of interest and costs. Prior to trial, Safeco tendered the full $100,000 policy limit to Cannatella in exchange for dismissal of the suit against them. On September 20, 2004, the district court granted a joint motion for partial dismissal with prejudice of all claims against Golden and Safeco, leaving only the remaining causes of action against Allstate.

A jury trial took place on May 16, 2005. The jury rendered its verdict in favor of Cannatella, awarding damages for the injuries he sustained in the automobile accident in the amount of

---

275. Moreover, Cannatella testified that he performed his detail in the same patrol unit and with the same equipment issued to him by the state police. Id. at 276.

$117,000.[2] The district court entered judgment on the verdict on May 24, 2005, noting that "[r]ecovery is limited in accordance with the policy issued to Kevin J. Cannatella by Allstate Insurance Company." R. at 202. Allstate subsequently tendered its $10,000 policy limit to Cannatella in satisfaction of the judgment.

Following the trial, a dispute arose between the parties as to whether Cannatella was entitled to a $2000 limit in medical payments coverage under the Allstate policy as part of the judgment. On July 13, 2005, Allstate filed a post-judgment Motion for Determination of Policy Coverage, arguing that Cannatella was not entitled to medical payments because the policy expressly provided that such coverage "does not apply to any person to the extent that the treatment is covered under any workers compensation law." Def.'s Ex. 1: Allstate Auto Insurance Policy at 5. Because Cannatella was working in the course and scope of his employment for the Louisiana State Police at the time of the accident, Allstate contended that Cannatella was

---

[2] The jury's damage award was divided into the following components: (1) $41,500 for physical pain, past and future; (2) $5000 for mental pain, past and future; (3) $3000 for permanent disability; (4) $17,500 for loss of earnings, past and future; and (5) $50,000 for medical expenses, past and future. R. at 193. The jury also found that Allstate had not acted arbitrarily, capriciously, and without probable cause in failing to pay Cannatella's claim after it received satisfactory proof of loss. Id. at 194. According to the record, although the jury was aware of Safeco's settlement before the trial, it was unaware of the precise amount of that payment to Cannatella while deliberating and calculating the damage award. Id. at 192.

-4-

covered under Louisiana's worker's compensation law.  Cannatella

responded that he had no worker's compensation insurance while

performing LACE detail for the St. Charles parish on the date of

the accident and therefore made no claim to receive any such

benefits.  Further, Cannatella argued that Allstate had not

provided any evidence or witnesses to show the St. Charles

District Attorney afforded him a worker's compensation policy.

On August 12, 2005, the district court issued a brief Order

and Reasons denying Allstate's motion, which was entered on

August 15, 2005.  The district court found that Cannatella was

entitled to the $2000 in medical payments coverage under

Allstate's policy because "Allstate presents no proof that

[Cannatella's] medical payments were covered by worker's

compensation[.]"  R. at 212-13.  Allstate timely filed its notice

of appeal from the order denying its motion on September 22,

2005.[3]

_____

[3]  Cannatella has not submitted a brief on this appeal despite at least two notices from the clerk's office to do so. Nonetheless, this court must examine the basis of its jurisdiction on its own motion if necessary.  See Mosley v. Cozby, 813 F.2d 659, 660 (5th Cir. 1987) (dismissing appeal for lack of effective notice of appeal).  "'A timely notice of appeal is not jurisdictional; however, in this circuit it is a prerequisite to our exercise of jurisdiction.'"  United States v. Carr, 979 F.2d 51, 55 (5th Cir. 1992) (quoting United States v. Winn, 948 F.2d 145, 153 (5th Cir. 1991)).  A notice of appeal must be filed with the district court clerk within thirty days after the judgment or order appealed from is entered. FED. R. APP. P. 4(a)(1)(A); see also 28 U.S.C. § 2107(a).  Allstate did not file its notice of appeal until September 22, 2005, more than a week after the original filing deadline of September 14, 2005. However, the final time for filing a timely notice of appeal was

-5-

## II. DISCUSSION

Although not specifically labeled as such, because Allstate's motion was filed more than ten days after the entry of judgment on the jury's verdict, we shall approach this case as an appeal from a motion for relief from judgment or order under FED. R. CIV. P. 60(b). See Shepherd v. Int'l Paper Co., 372 F.3d 326, 327 n.1 (5th Cir. 2004) ("If the motion is filed within ten days of the judgment or order of which the party complains, it is considered a Rule 59(e) motion; otherwise, it is treated as a Rule 60(b) motion."). We review the district court's denial of a Rule 60(b) motion for abuse of discretion. Warfield v. Byron, 436 F.3d 551, 555 (5th Cir. 2006). "It is not enough that the granting of relief might have been permissible, or even warranted denial must have been so unwarranted as to constitute an abuse of discretion." Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 402 (5th Cir. 1981).

We first turn to the language of the policy itself to determine whether the district court abused its discretion in concluding that Cannatella was entitled to the $2000 in medical payments coverage. The parties do not dispute that Louisiana law governs this action. "Under Louisiana law, a court should interpret an insurance policy under ordinary principles for the

extended by court order to November 25, 2005, because the district clerk's office was closed temporarily due to the effects of Hurricane Katrina. Accordingly, Allstate's notice of appeal is deemed timely for the purposes of this appeal.

-6-

interpretation of a contract.  The intentions of the parties, as reflected by the words of the policy, should determine the extent of coverage." Trinity Indus., Inc. v. Ins. Co. of N. Am., 916 F.2d 267, 269 (5th Cir. 1990).  Part II of Allstate's Auto Insurance Policy provides coverage for "all reasonable expenses incurred for medical treatment, services, or products actually rendered."  Def.'s Ex. 1: Allstate Auto Insurance Policy at 5. However, the policy also includes an exclusionary provision, expressly stating that "[t]his coverage does not apply to any person to the extent that the treatment is covered under any workers compensation law." Id.

The sole point of contention on this appeal is whether Canatella was covered under any worker's compensation policy during his LACE detail for the St. Charles parish and, thus, excluded from the $2000 limit for medical payments under the plain language of the policy.[4]  Cannatella insisted below that there was no evidence adduced during the trial to substantiate Allstate's claim that Cannatella was in fact covered under Louisiana's worker's compensation law on the date of the accident.  Allstate contends, however, that Cannatella's undisputed employment as a state trooper while performing his

---

[4]  The record demonstrates that Cannatella actually received medical treatment following the accident on November 1, 2001, in excess of $2000.  Moreover, Allstate does not dispute Cannatella's testimony that he never filed a worker's compensation claim to seek reimbursement of the medical payments. R. at 259.

LACE detail entitled him to worker's compensation coverage under the governing statutes in Louisiana and therefore falls within the ambit of Allstate's exclusionary provision.[5] In its Order

---

[5] During cross-examination, Cannatella conceded that he was working within the course and scope of his employment as a state trooper on the date of the accident, even though he was unsure about the effect of his LACE detail assignment on any worker's compensation benefits.

> Q. Well, at the time of the November 1, '01, accident on the Bonne Carre spillway, you were within the course and scope of your work as a state trooper; isn't that right?
> A. Yes, sir.
> Q. And among your benefits through your employment with the state police, you are able to make a Workers' Compensation claim because you were in the course and scope of your employment; is that right?
> A. Yes, sir.
> Q. And your Workers' Compensation claim would extend to payment of any medical bills that you might incur which were caused by you being involved in this automobile accident, right?
> A. I'm not quite sure what Workmen's Comp would cover.
> . . . .
> A. I'm not fully up to date on what the Workmen's Comp law is, but also due to the fact that although I was representing the state police, I was not actually working because I was being paid by -- at the time, which was the District Attorney's Office, so I'm not sure what, if any, that would have fell [sic] under.

R. at 298-99. The testimony of Lieutenant William Dorris at trial further clarified this arrangement during cross-examination by Cannatella's attorney.

> Q. Now, Trooper, when you are running LACE, while you're in a state police uniform and a state police vehicle, you are actually working for the district attorney of whatever parish has requested your services, correct? They are the ones who paid you through the state police.
> A. You're paid through them. You're actually working for the state police, but all monetary

-8-

and Reasons, the district court treated the issue as a matter of proof in concluding that Cannatella was entitled to the $2000 limit under Allstate's policy.  Upon review of the applicable Louisiana statutory and case law, however, we conclude that this dispute is more properly characterized as an issue of law.

Under Louisiana law, the state's worker's compensation scheme generally affords coverage to police officers like Cannatella.  See LA. REV. STAT. ANN. § 23:1034(A) (providing coverage under Louisiana's worker's compensation law "to every person in the service of the state or a political subdivision thereof[,]" including "members of the police department, or municipal employees performing police services for any municipality who are not elected officials"); see also LA. REV. STAT. ANN. § 40:1374 ("Every employee of the division of state police, except the head thereof, shall be considered an employee of the state within the meaning of the worker's compensation law of this state and entitled to the benefits of all the provisions of that law applicable to state employees.").  Further, the LACE detail assignment in this case appears to be an example of how local municipalities and parishes may contract with the state police at their own expense for local enforcement of both state laws and local ordinances.  See LA. REV. STAT. ANN. § 40:1388.

reimbursements is [sic] through the District Attorney's Office.

Id. at 470-71.

Cannatella failed to identify any authority, statutory or otherwise, that demonstrated how his assignment to LACE detail in the St. Charles parish on the date of the accident resulted in any forfeiture of his statutory entitlement to worker's compensation coverage. Therefore, in light of the applicable statutory authority, the plain language of Allstate's policy, and the factual circumstances of this case, we conclude that Cannatella was covered under the state's worker's compensation scheme as a matter of law and, consequently, not entitled to the $2000 medical payment limit.[6]

Moreover, we note that this case is directly controlled by the decision of the Supreme Court of Louisiana in Bentley v. Allstate Insurance Co., 715 So. 2d 1195 (La. 1998). The question presented in Bentley concerned the application of precisely the same exclusionary provision in an Allstate auto insurance policy to a similar factual scenario in which the insured was injured

_____

[6] Indeed, even if his worker's compensation benefits were ultimately paid by the St. Charles parish pursuant to the LACE detail assignment, Cannatella's performance of law enforcement duties would nonetheless entitle him to such coverage under Louisiana law. See LA. REV. STAT. ANN. § 23:1034.1 ("Any law enforcement officer employed by any municipality, who, while on or off duty, and outside his jurisdiction, but within the State of Louisiana, performs any law enforcement action and is injured shall be entitled to the provisions for compensation as provided herein and shall be paid such workers' compensation benefits by the municipality by which he is employed."). Moreover, Allstate's policy plainly excludes medical payments to the extent "treatment is covered under any workers compensation law[,]" regardless of the precise source of those benefits. Def.'s Ex. 1: Allstate Auto Insurance Policy at 5 (emphasis added).

while in the course and scope of her employment with the state of Louisiana. Like the district court's reasoning in the case at bar, the court of appeal determined that Allstate had "failed to discharge its burden of proving the exclusion applies" and accordingly affirmed the trial court's denial of Allstate's motion for summary judgment. Bentley v. Allstate Ins. Co., 701 So. 2d 257, 260 (La. Ct. App. 1997).

In dissent, Judge Plotkin reasoned that the case was controlled by Pinnell v. Patterson Services, Inc., 491 So. 2d 637 (La. 1986), which dictated that the trial court judgment be reversed and summary judgment granted in favor of Allstate.

> Unquestionably, Bentley's injuries were covered under workers' compensation. Moreover, contrary to the majority's conclusion, the Allstate policy exclusion at question unambiguously excludes medical coverage "to any person to the extent that treatment is covered under any workers compensation law."
> . . . .
> The Pinell case is correctly based on pure contract interpretation, which requires that this court interpret insurance policies, like other contracts, according to the clear, unambiguous language of the policy. The majority's interpretation nullifies important contract language without reason.

Bentley, 701 So.2d at 260 (Plotkin, J., dissenting). The Supreme Court of Louisiana subsequently reversed the judgment of the court of appeal "for the reasons assigned by Judge Steven R. Plotkin in his dissenting opinion" and granted summary judgment to Allstate. Bentley, 715 So. 2d at 1195-96; see also Pinell v. Patterson Servs., Inc., 491 So. 2d at 640 ("The exclusionary clause does not preclude benefits under the policy only in the

-11-

event workmen's compensation was actually paid to the insured and retained by him.  The clause operates as an exclusion when one 'had a right to compensation,' as opposed to when one <u>received</u> compensation.").  Therefore, as a federal court deciding the case pursuant to its diversity jurisdiction under 28 U.S.C. § 1332(a), we conclude that the district court abused its discretion in failing to apply directly controlling precedent from the Supreme Court of Louisiana to this case.

### III.  CONCLUSION

For the foregoing reasons, we REVERSE the order of the district court holding Cannatella entitled to the $2000 in medical payments coverage under Allstate's auto insurance policy. Costs shall be borne by Cannatella.